**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| STEVEN HOOD, | ) | CASE NO. 3:07-cv-03319 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JULIUS WILSON, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Steven Hood ("Hood"), challenges the constitutionality of his conviction in the case of *State v. Hood*, Huron County Court of Common Pleas Case No. CRI-2005-0931.  Hood, *pro se*, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on October 25, 2007 with the United States District Court for the Northern District of Ohio.  On April 2, 2008, Warden Julius Wilson ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 10.)  Hood filed a Traverse on June 2, 2008.  (Doc. No. 12.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Hood's petition be GRANTED in part and DENIED in part.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Hood's conviction as follows:

> [*P2]  The facts are as follows.  Appellant and Jill Warner had a long term relationship, having lived together, and having three children together.  At trial, Jill testified that in early February 2005, she and appellant separated and appellant moved out of the residence they shared.  However, appellant soon began making telephone calls to Jill seeking to move back into the residence.  Jill did not agree to this.  Appellant would turn angry during these phone calls.  At least once during these calls, appellant threatened to take Jill's life.  After two of these phone calls, appellant showed up at Jill's residence wanting to talk and "work things out." However, during these episodes, appellant was in an agitated state.  Jill repeatedly indicated to appellant that she did not want to have further discussions.
>
> [*P3]  After one of the phone calls, Jill left the residence, took the children, and spent the night at her grandparent's house.  When she returned to her residence the next morning, the front door had been kicked in and flowers that appellant had purchased earlier for Jill were strewn over the floor.  Jill reported several of these incidents to the police and received a Civil Protection Order against appellant.
>
> [*P4]  On February 20, 2005, appellant had another argument on the telephone with Jill. Appellant again threatened to end Jill's life.  Appellant told Jill he was coming over to her residence.  Jill began packing to leave with the children again.
>
> [*P5]  Appellant arrived before Jill could leave with the children.  Appellant began kicking in the door.  Jill called 911.  Appellant broke a window and came in through it, seriously cutting himself in the process.
>
> [*P6]  Appellant took two of the children upstairs.  He came back downstairs and took Jill upstairs as well.  He threw Jill onto a bed and she hit her head on the wood frame.  He threatened to kill Jill.  He took Jill back downstairs after he told one of the children that he was going to cut Jill with a knife.  He took Jill back upstairs. Jill grabbed a golf club and started to swing it at appellant, but appellant grabbed it away from Jill.  Appellant began shaking the golf club at the older child while asking him why he should not hurt or kill Jill.
>
> [*P7]  As the police arrived, appellant, Jill and the two children were still upstairs.  Wakeman Police Officer Brett Bottles testified that he entered the residence upon seeing fresh blood on the door.  He had his weapon drawn and announced his presence as an officer.  Officer Bottles heard Jill's screams coming from upstairs so he approached the bottom of the stairs.  Appellant shouted down to Officer Bottles, "don't come up here" and also shouted that if the officer did, "he would be sorry."

> [*P8] Officer Bottles testified that appellant appeared at the top of the stairs holding his older son in front of him "as a human shield." Appellant had his arm around his son's neck and was holding a golf club in his other hand. While holding his son in this manner, appellant said something to Officer Battles indicating that he would not be taken without force and that the officer "better be a good shot." Officer Bottles testified that appellant continued to talk to him in this manner for a few more moments. While appellant was talking to Officer Bottles, Jill took the younger son with her down the stairs past appellant and Officer Bottles. Shortly thereafter, appellant released his son, dropped the golf club, and came downstairs to surrender.

*State v. Hood*, 2007-Ohio-1877 at ¶¶2-8, 2007 Ohio App. LEXIS 1706 (Ohio Ct. App. Apr. 20, 2007).

## II. Procedural History

### A. Conviction

On February 20, 2005, Hood was arrested after breaking into the home of his former girlfriend and their children. (Doc. No. 10, Ex. 27.) He was released on bond on February 25, 2005. *Id.* On March 8, 2005, after conducting an evidentiary hearing, the trial court revoked Hood's bond. (Doc. No. 10, Exhs. 27 & 28.)

On April 13, 2005, the prosecution filed a Bill of Information charging Hood with burglary in violation of Ohio Revised Code ("O.R.C.") § 2911.12(A)(1), a felony of the second degree. (Doc. No. 10, Exh. 22.) On the same date, Hood, represented by counsel, entered a plea of guilty to the charge of burglary. (Doc. No. 10, Exhs. 23 & 29.)

Prior to sentencing, on May 25, 2005, Hood filed a *pro se* motion to withdraw his guilty plea and to dismiss his defense counsel. (Doc. No. 10, Exhs. 19 & 30.) Hood was appointed new counsel and, on September 13, 2005, the trial court permitted him to withdraw his guilty plea. (Doc. No. 10, Exh. 24.) Only two days later, at Hood's request, newly appointed defense counsel filed a motion to withdraw, which the trial court allowed. (Doc. No. 10, Exh. 27.) Hood

was again appointed new counsel. *Id.*

As Hood had withdrawn his negotiated plea agreement, the Huron County Grand Jury, on October 21, 2005, charged Hood with one count of aggravated burglary in violation of O.R.C. § 2911.11(A)(1), two counts of kidnapping in violation of O.R.C. § 2905.01, three counts of domestic violence in violation of O.R.C. § 2919.25(A), one count of disrupting public service in violation of O.R.C. § 2909.04(A)(1), one count of burglary in violation of O.R.C. § 2911.12(A)(3), and one count of menacing by stalking in violation of O.R.C. § 2903.211.  (Doc. No. 10, Exh. 1.)  On October 25, 2005, Hood pled "not guilty."  (Doc. No. 10, Exh. 2.)

On November 17, 2005, Hood filed a motion to dismiss the indictment alleging that his statutory and constitutional right to a speedy trial had been violated.  (Doc. No. 10, Exh. 26.)  The trial court denied his motion on December 7, 2005.  (Doc. No 10, Exh. 27.)

On December 6, 2005, the case proceeded to trial.  (Doc. No. 10, Exh. 3.)  Hood was found guilty of aggravated burglary, two counts of domestic violence, and menacing by stalking.[1] *Id.*  The trial court sentenced Hood to a term of five years imprisonment for aggravated burglary, nine months imprisonment for each domestic violence conviction, and nine months incarceration for menacing by stalking.  (Doc. No. 10, Exh. 4.)  The sentences were ordered to be served concurrently. *Id.*

**B.  Direct Appeal**

On February 24, 2006, Hood, through counsel, filed a Notice of Appeal with the Court of

---

[1] The jury found Hood not guilty of one count of domestic violence, not guilty of disrupting public service, and not guilty of burglary.  (Doc. No. 10, Exh. 3.)  The jury was unable to reach a verdict on the two counts of kidnapping.  The trial court declared a mistrial with respect to those counts. *Id.*

Appeals for the Sixth Appellate District ("state appellate court"). (Doc. No. 10, Exh. 5.) On October 11, 2006, Hood's counsel filed an appellate brief raising one assignment of error:

> The Appellant's conviction for Domestic Violence against Steven Hood Jr. should be reversed since it was based on insufficient evidence.

(Doc. No. 10, Exh. 6.)

On November 13, 2006, Hood filed a *pro se* motion seeking to supplement his brief in order to raise seven additional assignments of error.[2] (Doc. No. 10, Exhs. 8 & 9.) The state appellate court denied the motion since appellant was represented by counsel and not entitled to file documents *pro se*. (Doc. No. 10, Exh. 10.)

On April 20, 2007, the state appellate court affirmed Hood's conviction. (Doc. No. 10, Exh. 12.)

On May 25, 2007, Hood filed a timely Notice of Appeal with the Supreme Court of Ohio raising the following propositions of law:

> 1. Appellant was denied his Sixth Amendment Right to counsel during his direct appeal.[3]
>
> 2. The court of appeals erred and abused its discretion when the court rejected the sufficiency of the evidence claim by appellant and appellant should not have been convicted [by] the trier of facts in the case.

(Doc. No. 10, Exh. 14.)

---

[2] Among the seven assignments of error that Hood wished to add was a claim alleging that his sentence violated the Sixth Amendment based on the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856 (Ohio 2006).

[3] Appellate counsel's failure to challenge Hood's sentence on the basis of the *Foster* decision is one of several alleged deficiencies identified in Hood's brief before the Ohio Supreme Court. (Doc. No. 10, Exh. 14.)

On September 26, 2007, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 10, Exh. 15.)

**C.  Application to Reopen Appeal / Postconviction Relief**

Hood did not file an application to reopen his appeal or seek postconviction relief.

**D.  Federal Habeas Petition**

On October 25, 2007, Hood filed a Petition for Writ of Habeas Corpus and asserted the following ground for relief:

> GROUND ONE: Petitioner was denied his Sixth Amendment Right to Effective Assistance [of] counsel on direct appeal.

(Doc. No. 1.)

### III.  Review on the Merits[4]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[4] Respondent has not argued that Hood's claim is procedurally defaulted.  Therefore, any such argument has been waived.  *See Flood v. Phillips*, 90 Fed. Appx. 108, 114 (6th Cir. 2004) (observing that a respondent is "required to assert  procedural default as an affirmative defense in its responsive pleading.") *accord Hargrove v. Haviland*, 2005 U.S. Dist. LEXIS 11013 (S.D. Ohio June 7, 2005) (finding that the Respondent waived the affirmative defense of procedural default where it was raised for the first time in an objection to a Report and Recommendation.); *see also Oakes v. United States*, 400 F.3d 92, 96 (1st Cir. 2005) ("[P]rocedural default is an affirmative defense and ... the government may lose the defense by neglecting to raise it in a response to a habeas petition.")

-6-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts

-7-

defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

### A. Ground One: Ineffective Assistance of Appellate Counsel

Hood alleges that appellate counsel was ineffective for failing to raise the following assignments of error: (1) Hood was denied his speedy trial rights under both Ohio law and the federal Constitution; and (2) Hood was entitled to a resentencing hearing based on the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856 (Ohio 2006). Hood also asserts that appellate counsel was deficient due to unspecified "cumulative errors."

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

To prove ineffective assistance of appellate counsel, a petitioner must show deficient performance of appellate counsel that is prejudicial to the defendant under the *Strickland* test. *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993). Counsel must provide

-8-

reasonable professional judgment in presenting the appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986), *quoting Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Failure to raise "significant and obvious" issues on appeal can constitute ineffective assistance of appellate counsel. *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999). "[No] decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U S 745, 750-54 (1983); *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (tactical choices are properly left to the sound professional judgment of counsel). Failure of appellate counsel "to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005), *citing Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

    **1.**    **Speedy Trial Rights**

Hood asserts that counsel should have raised on appeal an alleged violation of his speedy trial rights under Ohio law. Pursuant to O.R.C. § 2945.71(C) & (E), a person charged with a felony must be brought to trial within two-hundred-seventy (270) days after that person's arrest and "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." Thus, a person held in jail should normally be brought to trial within ninety (90) days.

Here, Hood was arrested on February 20, 2005. He entered a plea of guilty on April 13,

2005 – fifty-two (52) days after his arrest.  On September 13, 2005, the trial court, upon Hood's request, permitted him to withdraw his guilty plea.  Hood's case then proceeded to trial on December 6, 2005.  The Ohio Supreme Court has observed that "[i]n situations where the legislature has not expressed its intent for R.C. 2945.71 to apply, the time limitation for bringing the appellant to trial is governed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."  *State v. Hull*,  852 N.E.2d 706,110 Ohio St. 3d 183, 187 (Ohio 2006); *see also State v. McAllister*, 372 N.E.2d 1341, 53 Ohio App. 2d 176, 178 (Ohio Ct. App. 1977) ("The provisions of Ohio's speedy trial statutes, R.C. 2945.71 *et seq*., are directed solely to an original trial following the arrest of a defendant, and have no application to the time within which a defendant must be tried following the vacation of a no contest plea on his own motion.")

  Furthermore, even if O.R.C. § 2945.71 were applicable, Hood's speedy trial rights were not violated.  The trial court considered Hood's motion to dismiss on speedy trial grounds, but denied the motion finding that only 215 days counted toward the 270 day period since Hood's arrest.[5]  Hood has not drawn this court's attention to any irregularity in the trial court's calculation and application of Ohio's speedy trial statute, nor does this Court perceive any clear error.  As such, appellate counsel's failure to raise a state speedy trial claim cannot have resulted in ineffective assistance.  Counsel was not required to raise meritless assignments of error that did not have a reasonable probability of changing the result of Hood's appeal.

---

[5] The trial court found that the span of time from Hood's guilty plea until the trial court allowed him to withdraw the plea was chargeable to Hood and did not count against the 270 day time period. (Doc. No. 10, Exh. 27.)  The court further gave Hood only one for one credit after September 13, 2005 because it found a bench warrant issued by Vermilion Mayor's Court constituted a valid holder.  *Id*.

-10-

Hood also asserts that counsel should have raised on appeal an alleged violation of his federal constitutional right to a speedy trial under the Sixth Amendment.  "A four-factor balancing test has been established by the Supreme Court to determine whether there has been a violation of an accused's constitutional right to a speedy trial.  These factors are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant."  *Norris v. Schotten*, 146 F.3d 314, 326 (6th Cir. 1998) (*citing Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993)).  Nonetheless, until a defendant suffers a delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *accord Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005) ("The length of the delay is a threshold requirement");  *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001) (delay is considered the "triggering" factor); *O'Dell*, 247 F.3d at 667 (same).  The length of delay is measured from the earlier of the date of indictment or the date of arrest.  *See Maples*, 427 F.3d at 1026.  Generally, "a delay that approaches one year is considered presumptively prejudicial."  *Norris*, 146 F.3d at 327.

Here, despite his initial guilty plea and multiple changes in counsel, Hood was brought to trial in just over nine months.  Therefore, the delay is not presumptively prejudicial.  Nonetheless, assuming *arguendo* that the length of the delay could be prejudicial, the remaining test factors work against Hood.  He was clearly responsible for any delay between April 13 when he plead guilty and September 13 of 2005 when the trial court allowed him to withdraw his guilty plea.  Hood's last pretrial change in counsel also resulted in a request of over a month delay to prepare for trial.  (Doc. No. 10, Exh. 27.)  Thus, six of the nine months that elapsed

between Hood's arrest and his trial were delays attributable to Hood. Finally, he makes no argument as to how the delay prejudiced him in preparing his defense. Under these circumstances, the Court finds that appellate counsel's failure to raise a federal constitutional speedy trial claim cannot have resulted in ineffective assistance, as there is no reasonable probability that Hood could have prevailed on this issue on appeal.

### 2. Resentencing Under *Foster*

Hood contends that appellate counsel was ineffective for failing to challenge his sentence in light of the Ohio Supreme Court's decision in *State v. Foster*. Hood received a sentence of five years imprisonment for his first degree aggravated burglary conviction, two years more than the presumed minimum applicable to him. (Doc. No. 10, Exh. 4.)

In *State v. Foster*, the Ohio Supreme Court addressed the constitutionality of several sentencing statutes, including O.R.C. § 2929.14(B)(2) – the statute under which Hood was sentenced. 845 N.E.2d at ¶28. In light of the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), the Ohio Supreme Court found that portions of the Ohio sentencing statutes violated the federal Constitution because sentences were based on additional judicial fact findings neither admitted by a defendant nor found by a jury. *Id.* at ¶¶61, 67. Under pre-*Foster* Ohio law, a sentencing court was required to "impose the shortest prison term authorized for the offense" unless: (1) the defendant was serving or had previously served a prison term; *or* (2) the court found on the record that the shortest prison term would either "demean the seriousness of the offender's conduct or will not adequately protect the public from future crime" by the defendant. O.R.C. § 2929.14(B)(1) & (2). The trial court expressly found that the shortest prison term was not appropriate for Hood because it would "demean the

seriousness of the offense ... [and] would not adequately protect the public including the victims in this case." (Doc. No. 10, Exh. 33.) This specific provision, O.R.C. § 2929.14(B)(2), was found to be unconstitutional by the *Foster* court. *Foster*, 845 N.E.2d at 470.

While federal courts are not bound by the *Foster* court's interpretation and application of *Blakely*, it is unnecessary to the disposition of this case for the Court to determine whether O.R.C. § 2929.14(B)(2) indeed ran afoul of the United States Supreme Court's decision. In the case before the Court, Hood has *not* directly raised a *Blakely* claim. Instead, Hood argues that his appellate counsel should have challenged his sentence on the basis of the Ohio Supreme Court's recent *Foster* decision. (Doc. No. 1.) The *Foster* court expressly stated that "those [cases] pending on direct review *must* be remanded to trial courts for new sentencing hearings not inconsistent with this opinion." 845 N.E.2d at 499 (emphasis added). Due to the fact that Hood's direct appeal was pending at the time of the *Foster* decision and that he was sentenced under a statute found to be unconstitutional by the same decision, it is clear he would have been entitled to a new sentencing hearing. Thus, appellate counsel's performance was deficient. *Foster* was decided over seven months *before* counsel filed his appellate brief on Hood's behalf. A reasonable appellate counsel would have been aware of the *Foster* decision and its far-reaching impact on all cases pending on direct appeal where the sentence imposed was greater than the minimum allowed. His failure to include an issue on which Hood would have clearly prevailed rendered his representation inadequate. Indeed, Respondent does not attempt to argue that, had this issue been included, the outcome of the appeal would be the same.

Instead, Respondent alleges that Hood was not prejudiced because he likely would have received the same sentence upon remand. (Doc. No. 10 at 11.) However, this Court cannot be

certain what a state court judge will do during a resentencing. The United States Supreme has "concluded that the uncertain judge should treat the error, not as if it were harmless, but as if it affected the verdict (*i. e.*, as if it had a 'substantial and injurious effect or influence in determining the jury's verdict')." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995); *see also Fry v. Pliler*, -- U.S. --, 127 S. Ct. 2321, 2328 (2007); *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *Stalnaker v. Bobby*, 2008 U.S. Dist. LEXIS 91493 at \*\*25-26 (N.D. Ohio, Nov. 10, 2008).[6] Thus, Respondent's argument is unavailing. Though the sentencing court may indeed impose the same sentence, such an argument, while reasonable, is purely speculative. While federal district courts in Ohio have taken different positions on the question, the prevailing view is that a *Blakely* violation is not harmless as the trial court could impose a different sentence on remand.[7]

> [B]ecause more than one outcome is possible upon re-sentencing, basing harmlessness on an assumed certainty is flawed. It converts the concept of harmless error in this context into a doctrine of always harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence must logically preclude any habeas court from saying for a certainty that the error is harmless.

*Villa-Garcia v. Warden, Noble Corr. Inst.*, 2007 U.S. Dist. LEXIS 23796 at \*\*12-13 (S.D. Ohio Mar. 30, 2007) (Frost, J.); *accord Cvijetinovic*, 2008 U.S. Dist. LEXIS 26483 at \*70; *Smith v. Petkovich*, 2008 U.S. Dist. LEXIS 39283 (N.D. Ohio May 12, 2008); *Davis*, 2008 U.S. Dist. LEXIS 16012 at \*27; *see also Crotts v. Bradshaw*, 2007 U.S. Dist. LEXIS 79044, 45-46 (N.D. Ohio Oct. 24, 2007) (Gwin, J.) ("While the state sentencing court may impose the same

---

[6] Here, of course, the issue is not whether the error affected the jury's verdict but rather whether it affected the sentence.

[7] Although the claim before the Court is not a *Blakely* claim *per se* but rather an ineffective assistance of appellate counsel claim for failing to challenge a sentence under *Foster*, the same analysis is appropriate.

sentence, it also may choose to impose a different one, as such the Court does not find the error harmless."); *contra Smith v. Moore*, 2008 U.S. Dist. LEXIS 64371 at *5 (N.D. Ohio Aug. 19, 2008) (Adams, J.) (finding that judicial fact findings, while violating the Sixth Amendment, amounted to harmless error as the offending statutes found unconstitutional in *Foster* "actually served to protect a defendant from a harsher sentence"). Indeed, under the ruling in *Foster*, all cases pending on direct appeal were ordered to be resentenced without any consideration of a harmless error analysis. *See Foster*, 845 N.E.2d at 499.

Based on the foregoing, Hood has sufficiently demonstrated that he was deprived the effective assistance of appellate counsel in violation of his rights under the Sixth Amendment.

**3.      Cumulative Errors**

As Hood is proceeding *pro se*, "'his pleadings are held to a less stringent standard than those prepared by an attorney' and are liberally construed in his favor." *Humphreys v. United States*, 238 Fed. Appx. 134, 138 (6th Cir. 2007) (*quoting See Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006)). Nevertheless, Hood's third assignment of error is insufficiently developed. While the basis for his claim is unclear at best, the law quoted by Hood is more relevant to an argument that trial counsel was ineffective due to cumulative errors. (Doc. No. 1.) Other than the two alleged errors discussed above, Hood fails to identify any specific errors by either appellate counsel or trial counsel. *Id.* Despite the deferential standard courts give to *pro se* pleadings, this Court cannot be expected to parse through the entire record searching for errors to support Hood's allegation. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention

-15-

a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.")
(citations omitted).  Furthermore, "the law of this Circuit is that cumulative error claims are not
cognizable on habeas [review] because the Supreme Court has not spoken on this issue."
*Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. Ohio 2006); *accord Cross v. Stovall*, 238 Fed.
Appx. 32, 41 (6th Cir. 2007); *Otte v. Houk*, 2008 U.S. Dist. LEXIS 10296 (N.D. Ohio Feb. 12,
2008).

Accordingly, Hood's cumulative error claim is not well taken.

### IV.  Summary Judgment

On July 30, 2008, Hood filed a motion for summary judgment (Doc. No. 13) to which
Respondent filed a brief in opposition on August 13, 2008.  (Doc. No. 14.)  As the undersigned
has addressed the merits of Hood's claims, it is recommended that Hood's motion for summary
judgment be denied as moot.

### V.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Hood's Petition be
GRANTED in part and DENIED in part.  Hood's claims that appellate counsel was ineffective
for failing to raise a speedy trial claim and a cumulative error claim should be denied.  With
respect to Hood's ineffective assistance of appellate counsel claim for failing to raise a
sentencing violation under *Foster*, it is recommended that Hood's petition for a writ of habeas
corpus be conditionally GRANTED and that Hood be released from state custody within ninety
(90) days from the time the Court's decision becomes final unless the state: (1) reopens Hood's

appeal challenging his sentence, *or* (2) resentences him in accordance with the law.

                                                                       s/ Greg White
                                                        U.S. MAGISTRATE JUDGE

Date: December 5, 2008

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**