IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN HOOD, | ) | CASE NO. 3:07 CV 3319 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| DAVID BOBBY, Warden, | ) | Magistrate Judge Greg White |
| | ) | |
| Respondent. | ) | **MEMORANDUM OPINION AND ORDER** |

This matter comes before the Court upon the Report and Recommendation of Magistrate Judge Greg White. The Court hereby accepts in part and rejects in part the Report and Recommendation (Docket #16) and Petitioner's Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254, filed on October 25, 2007 (Docket #1) is hereby DENIED.

**Factual and Procedural History**

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:[1]

I. Summary of Facts
In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); see also House v. Bell, 283 F.3d

---

[1] The Court has omitted the Magistrate Judge's footnotes in restating the factual and procedural history in this case.

37 (6th Cir. 2002). The state appellate court summarized the facts underlying Hood's conviction as follows:

> [*P2] The facts are as follows. Appellant and Jill Warner had a long term relationship, having lived together, and having three children together. At trial, Jill testified that in early February 2005, she and appellant separated and appellant moved out of the residence they shared. However, appellant soon began making telephone calls to Jill seeking to move back into the residence. Jill did not agree to this. Appellant would turn angry during these phone calls. At least once during these calls, appellant threatened to take Jill's life. After two of these phone calls, appellant showed up at Jill's residence wanting to talk and "work things out." However, during these episodes, appellant was in an agitated state. Jill repeatedly indicated to appellant that she did not want to have further discussions.
>
> [*P3] After one of the phone calls, Jill left the residence, took the children, and spent the night at her grandparent's house. When she returned to her residence the next morning, the front door had been kicked in and flowers that appellant had purchased earlier for Jill were strewn over the floor. Jill reported several of these incidents to the police and received a Civil Protection Order against appellant.
>
> [*P4] On February 20, 2005, appellant had another argument on the telephone with Jill. Appellant again threatened to end Jill's life. Appellant told Jill he was coming over to her residence. Jill began packing to leave with the children again.
>
> [*P5] Appellant arrived before Jill could leave with the children. Appellant began kicking in the door. Jill called 911. Appellant broke a window and came in through it, seriously cutting himself in the process.
>
> [*P6] Appellant took two of the children upstairs. He came back downstairs and took Jill upstairs as well. He threw Jill onto a bed and she hit her head on the wood frame. He threatened to kill Jill. He took Jill back downstairs after he told one of the children that he was going to cut Jill with a knife. He took Jill back upstairs. Jill grabbed a golf club and started to swing it at appellant, but appellant grabbed it away from Jill. Appellant began shaking the golf club at the older child while asking him why he should not hurt or kill Jill.
>
> [*P7] As the police arrived, appellant, Jill and the two children were still upstairs. Wakeman Police Officer Brett Bottles testified that he entered the residence upon seeing fresh blood on the door. He had his weapon drawn and announced his presence as an officer. Officer Bottles heard Jill's

screams coming from upstairs so he approached the bottom of the stairs. Appellant shouted down to Officer Bottles, "don't come up here" and also shouted that if the officer did, "he would be sorry."

[*P8] Officer Bottles testified that appellant appeared at the top of the stairs holding his older son in front of him "as a human shield." Appellant had his arm around his son's neck and was holding a golf club in his other hand. While holding his son in this manner, appellant said something to Officer Battles indicating that he would not be taken without force and that the officer "better be a good shot." Officer Bottles testified that appellant continued to talk to him in this manner for a few more moments. While appellant was talking to Officer Bottles, Jill took the younger son with her down the stairs past appellant and Officer Bottles. Shortly thereafter, appellant released his son, dropped the golf club, and came downstairs to surrender.

*State v. Hood*, 2007-Ohio-1877 at ¶¶2-8, 2007 Ohio App. LEXIS 1706 (Ohio Ct. App. Apr. 20, 2007).

II. Procedural History

A. Conviction

On February 20, 2005, Hood was arrested after breaking into the home of his former girlfriend and their children. (Doc. No. 10, Ex. 27.) He was released on bond on February 25, 2005. *Id.* On March 8, 2005, after conducting an evidentiary hearing, the trial court revoked Hood's bond. (Doc. No. 10, Exhs. 27 & 28.)

On April 13, 2005, the prosecution filed a Bill of Information charging Hood with burglary in violation of Ohio Revised Code ("O.R.C.") § 2911.12(A)(1), a felony of the second degree. (Doc. No. 10, Exh. 22.) On the same date, Hood, represented by counsel, entered a plea of guilty to the charge of burglary. (Doc. No. 10, Exhs. 23 & 29.)

Prior to sentencing, on May 25, 2005, Hood filed a pro se motion to withdraw his guilty plea and to dismiss his defense counsel. (Doc. No. 10, Exhs. 19 & 30.) Hood was appointed new counsel and, on September 13, 2005, the trial court permitted him to withdraw his guilty plea. (Doc. No. 10, Exh. 24.) Only two days later, at Hood's request, newly appointed defense counsel filed a motion to withdraw, which the trial court allowed. (Doc. No. 10, Exh. 27.) Hood was again appointed new counsel. Id.

As Hood had withdrawn his negotiated plea agreement, the Huron County Grand Jury, on October 21, 2005, charged Hood with one count of aggravated

-3-

burglary in violation of O.R.C. § 2911.11(A)(1), two counts of kidnapping in violation of O.R.C. § 2905.01, three counts of domestic violence in violation of O.R.C. § 2919.25(A), one count of disrupting public service in violation of O.R.C. § 2909.04(A)(1), one count of burglary in violation of O.R.C. § 2911.12(A)(3), and one count of menacing by stalking in violation of O.R.C. § 2903.211. (Doc. No. 10, Exh. 1.) On October 25, 2005, Hood pled "not guilty." (Doc. No. 10, Exh. 2.)

On November 17, 2005, Hood filed a motion to dismiss the indictment alleging that his statutory and constitutional right to a speedy trial had been violated. (Doc. No. 10, Exh. 26.) The trial court denied his motion on December 7, 2005. (Doc. No 10, Exh. 27.)

On December 6, 2005, the case proceeded to trial. (Doc. No. 10, Exh. 3.) Hood was found guilty of aggravated burglary, two counts of domestic violence, and menacing by stalking. *Id.* *[See footnote.]* The trial court sentenced Hood to a term of five years imprisonment for aggravated burglary, nine months imprisonment for each domestic violence conviction, and nine months incarceration for menacing by stalking. (Doc. No. 10, Exh. 4.) The sentences were ordered to be served concurrently. *Id.*

B. Direct Appeal

On February 24, 2006, Hood, through counsel, filed a Notice of Appeal with the Court of Appeals for the Sixth Appellate District ("state appellate court"). (Doc. No. 10, Exh. 5.) On October 11, 2006, Hood's counsel filed an appellate brief raising one assignment of error:

> The Appellant's conviction for Domestic Violence against Steven Hood Jr. should be reversed since it was based on insufficient evidence.

(Doc. No. 10, Exh. 6.)

On November 13, 2006, Hood filed a pro se motion seeking to supplement his brief in order to raise seven additional assignments of error. (Doc. No. 10, Exhs. 8 & 9.) The state appellate court denied the motion since appellant was represented by counsel and not entitled to file documents pro se. (Doc. No. 10, Exh. 10.)

On April 20, 2007, the state appellate court affirmed Hood's conviction. (Doc. No. 10, Exh. 12.)

On May 25, 2007, Hood filed a timely Notice of Appeal with the Supreme Court of Ohio raising the following propositions of law:

> 1. Appellant was denied his Sixth Amendment Right to counsel during his direct appeal.
> 2. The court of appeals erred and abused its discretion when the court rejected the sufficiency of the evidence claim by appellant and appellant should not have been convicted [by] the trier of facts in the case.

(Doc. No. 10, Exh. 14.)

On September 26, 2007, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 10, Exh. 15.)

C.  Application to Reopen Appeal / Postconviction Relief

Hood did not file an application to reopen his appeal or seek post-conviction relief.

D. Federal Habeas Petition

On October 25, 2007, Hood filed a Petition for Writ of Habeas Corpus and asserted the following ground for relief:

> GROUND ONE: Petitioner was denied his Sixth Amendment Right to Effective Assistance [of] counsel on direct appeal.

(Doc. No. 1.)

Petitioner alleges that appellate counsel was ineffective for failing to raise two assignments of error - first, that he was denied his speedy trial rights under both Ohio law and the Federal Constitution and, second, that he was entitled to a resentencing hearing based on the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (Ohio 2006). Petitioner also asserts that appellate counsel was deficient due to unspecified "cumulative errors."

On December 5, 2008, Magistrate Judge White issued his Report and Recommendation, recommending that the Petition be granted in part and denied in part.

First, the Magistrate Judge found that Petitioner was not denied his speedy trial rights, in

that Ohio Rev. Code § 2945.71 had no application to Petitioner's case, as said Section is directed solely to an original trial following the arrest of a defendant, and has no application where Petitioner requested and was permitted to withdraw his guilty plea prior to trial. Further, the Magistrate Judge reasoned that even if Ohio Rev. Code § 2945.71 were applicable to Petitioner's case, his speedy trial rights were not violated. The trial court considered Petitioner's motion to dismiss on speedy trial grounds, but denied the motion finding only that 215 days counted toward the 270 day period since Petitioner's arrest. The Magistrate Judge noted that Petitioner has failed to show any irregularity in the trial court's calculation and there is no clear error in the calculation and application of the speedy trial statute. Therefore, appellate counsel's failure to raise a state speedy trial claim could not have resulted in ineffective assistance of counsel.

Relative to Petitioner's assertion that appellate counsel should have raised on appeal an alleged violation of his Federal Constitutional right to a speedy trial under the Sixth Amendment, the Magistrate Judge applied the four-factor test established in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), in assessing whether the delay prior to trial was prejudicial. The Magistrate Judge reasoned that Petitioner was brought to trial in just over nine months and, therefore, that the delay is not presumptively prejudicial. Further, the Magistrate Judge discussed the fact that if the nine month delay were assumed to be prejudicial, Petitioner was responsible for a large portion of the delay, as he plead guilty on April 13, 2005; later requested to withdraw his guilty plea on September 13, 2005; and, changed counsel leading to an additional month for trial preparation. Therefore, six of the nine months that elapsed between arrest and trial were the result of Petitioner's actions. Finally, the Magistrate Judge points out that Petitioner has raised no argument as to how the delay prejudiced him in preparing his defense. Accordingly, the

-6-

Magistrate Judge found that appellate counsel's failure to raise a Federal Constitutional speedy trial claim cannot have resulted ineffective assistance, as there is no reasonable probability that he could have prevailed on appeal.

Second, the Magistrate Judge addressed Petitioner's argument that appellate counsel was ineffective for failing to challenge his sentence in light of the Ohio Supreme Court decision in *State v. Foster*. Petitioner received a sentence of five years imprisonment for his first degree aggravated burglary conviction, two years more than the presumed minimum applicable to him. Petitioner was sentenced pursuant to Ohio Rev. Code § 2929.14(B)(2). In *State v. Foster*, the Ohio Supreme Court determined that in light of the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), portions of the Ohio sentencing statutes violated the Federal Constitution because sentences were based on additional judicial fact findings neither admitted by a defendant nor found by a jury. In Petitioner's case, the trial court expressly found that the shortest prison term was not appropriate for Petitioner because it would "demean the seriousness of the offense . . . [and] would not adequately protect the public including the victims in this case." This specific provision, Ohio Rev. Code § 2929.14(B)(2), was found to be unconstitutional by the *Foster* court.

While the Magistrate Judge noted that Federal courts are not bound by the *Foster* court's interpretation and application of *Blakely*, the Magistrate Judge distinguishes this case from those implicating *Blakely*, as Petitioner is arguing that appellate counsel should have challenged his sentence on the basis of *Foster*. The Magistrate Judge cites *Foster*, finding that because Petitioner's direct appeal was pending at the time of the *Foster* decision, and he was sentenced under a statute found to be unconstitutional by the same decision, Petitioner is entitled to a new

sentencing hearing and appellate counsel's performance was deficient. The Magistrate Judge reasoned that because *Foster* was decided over seven months before counsel filed his appellate brief, the failure to include this issue rendered his representation inadequate. The Magistrate Judge determined that it is unclear whether Petitioner was prejudiced by the failure to raise the issue on appeal, as it is uncertain what a State court judge will do during a resentencing. Accordingly, the Magistrate Judge recommends that the Petition be granted to the extent it alleges ineffective assistance of appellate counsel in failing to challenge the sentence under *State v. Foster*.

Third, the Magistrate Judge found Petitioner's argument for ineffective assistance of counsel due to cumulative errors to be insufficiently developed. Other than the two errors discussed thoroughly above, Petitioner fails to identify any specific errors by either appellate counsel or trial counsel. Accordingly, the Magistrate Judge recommends that relief be denied as to Petitioner's cumulative error claim.

In addition to the above, the Magistrate Judge recommends that the Motion for Summary Judgment filed by Petitioner (Docket #13) be denied as moot, as all issues have been thoroughly addressed by way of the Report and Recommendation.

On December 15, 2008, Respondent filed Objections to the Magistrate Judge's Report and Recommendation. (Docket #17.) Respondent objects only to the Magistrate Judge's recommendation as to Petitioner's claim that appellate counsel was constitutionally ineffective for failing to challenge his sentence pursuant to *State v. Foster*. Specifically, Respondent argues that based on the record in this case, there is no reason to believe that Petitioner would have received a lighter sentence upon resentencing. Respondent cites *Flannery v. Hudson*, 2008 U.S.

Dist. LEXIS 31859, at *12-13 (N.D. Ohio April 17, 2008), in which the Court discussed the standard in *Strickland v. Washington*, 507 U.S. 619 (1993), requiring that Petitioner show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. The Court in *Flannery* stated:

> Speculation that a judge may repeat his sentence without explicit fact-finding does not render counsel's omission "harmless as a certainty." *Villa-Garcia v. Warden, Noble Corr. Inst.*, No. 2:05-CV-810, 2007 U.S. Dist. LEXIS 23796, 2007 WL 1028528, at *4 (S.D. Ohio 2007). Likewise, such speculation does not mean, and Petitioner does not argue, that Petitioner would receive a more favorable sentence if the Court grants his Petition. *Shafer v. Wilson*, No. 1:06-CV-648, 2007 U.S. Dist. LEXIS 6597, 2007 WL 315760, at *11 (N.D. Ohio 2007). Petitioner may even receive greater penalties if the Court grants his Petition. *Foster*, 109 Ohio St.3d at 31. At best, these are equivocal possibilities, and do not produce a reasonable probability.

*Flannery*, 2008 U.S. Dist LEXIS 31859, at *12-13.

Respondent relates that the incident in this case involved, as one of the victims, Petitioner's young son. (Doc. 10, Return of Writ, Exhibit 33, Tr. 71). Petitioner held his former girlfriend and three children hostage, threatening to kill his girlfriend and using his eldest child as a "human shield" when police arrived. (Doc. 16 at 2-3.) Petitioner has a history of criminal convictions and had "not responded favorably to the sanctions that were previously imposed on him." (Doc. 10, Return of Writ, Exhibit 33, Tr. 71.) He has an "alcohol abuse pattern," which he had not acknowledged until sentencing and had not sought treatment for the problem. (Id., Tr. 71-72). The Court referred to the crime as "a long tragic affair." (Tr. 76.)

Respondent argues that Petitioner has not provided any reason or offered any evidence that would support a lighter sentence upon resentencing; the five-year sentence Petitioner received is on the lower end of his potential sentence of three to ten years for a first degree felony; and, his other sentences ran concurrently. Therefore, because Petitioner has not

established that there is a reasonable probability that but for his attorney's omission his sentence would have been different, Respondent argues that Petitioner has not shown that he was prejudiced by appellate counsel's failure to challenge his sentence pursuant to *Foster*.

On December 30, 2008, Petitioner filed his Objection and Rebuttal to Respondent's Objection to Magistrate's Report and Recommendation. (Docket #18.) Petitioner argues that he could obtain a substantially different outcome if he were resentenced and that he was "manifestly deprived of fundamental fairness and his protected right to effective assistance of counsel."

### Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R. CIV. P. 72(b) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The Court has reviewed the Report and Recommendation *de novo*, and the objections to the Report and Recommendation raised by Respondent and Petitioner's Objections and Rebuttal. Based on that review, the Court finds that the Magistrate Judge correctly determined that appellate counsel's failure to raise a Federal Constitutional speedy trial claim cannot have resulted ineffective assistance, as there is no reasonable probability that he could have prevailed on appeal. Petitioner's speedy trial rights were not violated. Further, the Court agrees with the Magistrate Judge's determination that Petitioner's claim of cumulative error is unsubstantiated,

as Petitioner fails to identify any specific errors by either appellate counsel or trial counsel which would entitle him to relief. Therefore, relief must be denied as to Petitioner's cumulative error claim.

However, the Court declines to adopt the Magistrate Judge's Report and Recommendation as it relates to Petitioner's claim that appellate counsel was ineffective for failing to challenge his sentence pursuant to *State v. Foster*. Petitioner has not presented evidence that there is a reasonable probability that but for his attorney's omission his sentence would have been different. *Flannery v. Hudson*, 2008 U.S. Dist. LEXIS 31859, at *12-13 (N.D. Ohio April 17, 2008). To obtain habeas relief, Petitioner must show that, absent counsel's deficient performance, there is a "reasonable probability that "the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Absent a showing of prejudice to Petitioner, he is not entitled to habeas relief.

### Conclusion

As discussed above, the Court hereby ACCEPTS IN PART and REJECTS IN PART the Report and Recommendation issued by Magistrate Judge White (Docket #16). Petitioner's Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket #1) is hereby DENIED.

Petitioner's Motion for Summary Judgment (Docket #13) is DENIED AS MOOT.

Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b).

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: January 15, 2009